**Alice LeJEUNE, Individually and as Guardian, Appellant,**

v.

**GULF STATES UTILITIES COMPANY, Appellee.**

**No. 6837.**

Court of Civil Appeals of Texas.

Beaumont.

Dec. 8, 1966.

Rehearing Denied Dec. 29, 1966.

1. Issue as to market value of appellees' land condemned for reservior purposes.

Long & Parker, Port Arthur, for appellant.

Orgain, Bell & Tucker, Beaumont, for appellee.

PARKER, Justice.

Alice LeJeune, individually and as guardian of the estate of the minor children of the marriage of Alice LeJeune and Joseph M. LeJeune, sued Gulf States Utilities Company for actual and exemplary damages based on the death of Joseph M. LeJeune on July 26, 1963, while an employee of Gulf States Utilities Company. Gulf States Utilities Company moved for and obtained a summary judgment against the plaintiff denying all of plaintiff's claims and causes of action wherein plaintiff sought to recover actual damages, decreeing that plaintiff's rights and claims for actual damages are limited to those under the Compensation Laws of the State of Texas without prejudice to plaintiff's right to try their suit, claim and cause of action against Gulf States Utilities Company, seeking recovery of exemplary damages by reason of alleged gross negligence of the defendant Gulf States Utilities Company. Trial was had upon the question of exemplary damages resulting in the court instructing a verdict against the plaintiff and in favor of the defendant Gulf States Utilities Company with final judgment entered that the plaintiff do have and recover nothing over and against the defendant. The plaintiff below will be called appellant and the defendant below will be called appellee or Gulf States Utilities Company.

THE SUMMARY JUDGMENT

The appellant's first point of error is as follows:

"The error of the Court in granting interlocutory summary judgment to the appellee, holding that the Court did not have jurisdiction to inquire into the working agreement between the Texas General Indemnity Company and Gulf States Utilities Company, which is a part of the Contract between these parties, designated as a Contract for Workmen's Compensation Insurance. In order to determine whether or not such agreement, which is a part of the Contract, is in derogation and would tend to restrict the operation of the Workmen's Compensation Law."

This is the sole point of error appellant directs against the summary judgment.

Appellee's motion for summary judgment on the actual damage issue was predicated on the undisputed fact that appellee was a subscriber under the Workmen's Compensation Law and thereby was relieved of any liability for actual damages. Distinct and separate grounds, each established by the uncontradicted facts, were specified in the motion, to-wit: (a) res judicata; (b)

estoppel and waiver; (c) election of remedies; (d) that the policy and endorsements were authorized by law of the State of Texas and approved by the State Board of Insurance Commissioners; (e) the fact that a standard workmen's compensation policy was in effect and that appellee had complied with the Act was alleged in the motion and supported by affidavit and certified copies. The court in granting the motion for summary judgment "sustained each and all of the reasons and grounds specified in the motion for summary judgment."

Undisputed facts are: On July 26, 1963, Gulf States Utilities Company was a subscriber to the workmen's compensation insurance law with insurance carried by Texas General Indemnity Company. This insurance policy has the stamp of approval of the Board of Insurance Commissioners dated April 6, 1948. The endorsement and plan of operation had been approved by the Casualty Insurance Commission of the State of Texas. Notices of injury and death of employees of a subscriber were given to the insurance carrier, which sets up and maintains reserves required by the insurance laws of the State of Texas. No adjustments are made to employers holding this type of policy and endorsement until after the losses have been ascertained and the proper reserve has been set up and maintained. The premiums paid were at the rate specified in the policy, which were rates fixed and approved by the State Board of Insurance. The foregoing was done in this case and under this policy.

"(1) Gulf States Utilities Company had duly filed with the Industrial Accident Board notice of having become a subscriber under the Act. Following the death of Joseph M. LeJeune, an employee of the Appellee, the following proceedings took place before the Industrial Accident Board of the State of Texas:

(a) Employer's first report of injury was filed.

(b) Appellant, Alice J. LeJeune, through her attorneys, filed notice of fatal injury, claim for compensation, and statement of beneficiary and death certificate.

(c) Letters of guardianship were filed showing Appellant's qualifications as guardian of the minor children.

(d) Report of initial payment of compensation was filed showing the compensation benefits were being paid.

(e) Appellant through her attorneys twice requested the Industrial Accident Board to set the cause for hearing and that an award be entered, and on October 11, 1963, the Industrial Accident Board of the State of Texas entered its final ruling, order and award, finding among other things, 'On July 26, 1963, Gulf States Utilities Company was a subscriber to the workmen's compensation insurance law with insurance carried by Texas General Indemnity Company. In their employ was Joseph M. LeJeuene, whose average weekly wage produced a compensation rate of $35.00 per week under the Act. On said date Joseph M. LeJeune suffered accidental injury in the course of this employment, resulting in his death.' The Board further found and named the beneficiaries and ordered the Texas General Indemnity Company to pay the maximum compensation provided by law."

 Appellant sought and obtained this award of compensation, which has the effect of a final judgment, establishing that Gulf States Utilities Company was a subscriber to the Workmen's Compensation Insurance Law with the insurance carried by Texas General Indemnity Company, and received and accepted the benefits thereof. Appellant cannot be heard to assert the contrary and attempt to recover actual damages on the ground that Gulf States Utilities Company was not a subscriber under the Act. Sheek v. Texas Co., 286 S.W. 336 (Tex.Civ.App., 1926, n. w. h.); Gomillion v. Union Bridge & Construction Co.,

5 Cir., 100 F.2d 937; Texas Employers' Ins. Ass'n v. Price, 300 S.W. 667 (Tex. Civ.App. 1927) application for writ dismissed, 117 Tex. 173, 300 S.W. 672 (1927); Constitution Indemnity Co. v. Shytles, 47 F.2d 441 (U.S. Circuit Court, 5th Circuit, 1931). Such cases hold that a common law damage suit for actual damages cannot be maintained against the employer in a case where compensation has been claimed, awarded and collected from the compensation carrier. An award of the Industrial Accident Board has the same force and effect as a judgment and is binding and conclusive on the parties. Middlebrook v. Texas Indemnity Ins. Co., 112 S.W.2d 311, err. dis., 131 Tex. 163, 114 S.W.2d 226; Magnolia Petroleum Co. v. Hunt, 320 U.S. 430, 64 S.Ct. 208, 88 L.Ed. 149.

■ There was a compensation policy in force in standard and approved form with notice of becoming a subscriber duly filed with the Industrial Accident Board as required by Articles 8306 § 3c and 8308 § 20, Vernon's Ann.Civ.St. The Workmen's Compensation Law provides that employees of a subscriber have no right of action at common law for actual damages. Art. 8306 §§ 3, 3a, V.A.C.S. Whether the premiums were paid or the manner in which paid was immaterial insofar as appellant is concerned. There was a compensation policy in force. Appellant invoked the jurisdiction of the Industrial Accident Board, obtained an award and has accepted the payments awarded.

The second proposition appellee relied upon in its motion for summary judgment was that in filing claim for compensation with the Industrial Accident Board and pursuing the same to a final ruling, order and award and accepting the compensation payments by virtue of such award, appellant was estopped to question the validity of the compensation policy. The third proposition relied on by appellee in its motion for summary judgment was that appellant having filed notice of injury and claim for compensation and pursued the same to final

judgment and having received, collected and retained the benefits thereof, thereby made a final and binding election to proceed under the Workmen's Compensation Act of the State of Texas, and waived all claims for actual damages at common law. Art. 8306, §§ 3a and 3b; 22 Tex.Juris.2d, p. 674, ¶ 11; 34 Tex.Juris.2d, p. 480, ¶ 489; Hill v. Preston, 119 Tex. 522, 34 S.W.2d 780 (1931); Empire Gas & Fuel Co. v. Albright, 126 Tex. 485, 87 S.W.2d 1092 (1935); Daniel v. Goesl, 161 Tex. 490, 341 S.W.2d 892 (S.Ct.1960); Mueller v. Banks, 332 S.W.2d 783 (Tex.Civ.App.1960).

■ Under point of error No. 1 appellant states:

"We are here confronted with a situation in which the Texas General Indemnity Company, which has a permit to do business in the State of Texas, issued a Contract to the appellee, Gulf States Utilities Company, which purports to be a Workmen's Compensation Insurance Contract, and this Contract was issued on the regularly form approved by the Texas Insurance Commission and having attached thereto what purports to be an Endorsement called an Assessment and Participation Endorsement, said Endorsement was also approved by the Texas Insurance Commission."

Further, appellant states: "The appellant does not contend that a Participation and Assessment Endorsement placed on a Workmen's Compensation Insurance Contract is in derogation of the law, * * *." Thus, appellant concedes the validity of the policy and the endorsement. The validity of the policy itself is not affected by the endorsement authorizing the 11% to be paid Texas General Indemnity Insurance Company for it is of no concern of the appellant what premiums were paid or how they were paid. Appellee and the insurance company necessarily had to agree as to the percent of the annual premium referred to in the approved endorsement form. Appellee was not a self-insurer. Such percentage was paid by appellee to the insurer.

Appellant then asserts that the method of handling claims and the general procedure "is in derogation of law", but fails to state what law forbids an insurance company from handling claims by such method as it chooses. There is none.

Second. Appellant contends that the contract created no obligation on the part of Texas General Indemnity Company to do anything. The award of the Industrial Accident Board is a final, binding and enforceable award by which appellant has, in fact, created an obligation on the part of Texas General Indemnity Company. This is contrary to the position of appellant filing a claim and obtaining a final award of the Industrial Accident Board obligating Texas General Indemnity Company to pay compensation. Appellant cites the case of Standard Acc. Ins. Co. v. Barron, 47 S.W.2d 380, err. ref'd (Tex.Civ. App. Jan. 6, 1932), 122 Tex. 179, 53 S.W.2d 769 (Oct. 26, 1932). In that case the court said:

"Contracts made in obedience to or in attempted compliance with the statute must be construed liberally in favor of employees as its beneficiaries, and applied in such manner as will more nearly and certainly accomplish the full purpose of the act and uphold the wholesome policy inducing the enactment. The provisions of the act will be read into such contracts by implication when not expressly adopted as a part of the agreement. In this case the provisions of the act were expressly adopted into the contract. If any part of the contract is in derogation of the law, or seeks to restrict the operation of the law, it should be nullified by the courts."

■ The insurance policy involved in this case is not in derogation of and does not tend to restrict the operation of the Workmen's Compensation Law. On the contrary, appellee and appellant each have construed this insurance contract as written as made in compliance with the statute in favor of the employee as its beneficiary to accomplish the full purpose of the Workmen's Compensation Act. The policy complies with the provisions of the Act, endorsements included as part of the policy. The summary judgment was properly rendered for each reason asserted in appellee's motion therefor. Further, appellant has failed to assign error or brief the independent grounds upon which the court granted summary judgment for which reason the summary judgment should be and is sustained. City of Deer Park v. State, 275 S.W.2d 77 (S.Ct.1954); Rule 418, Texas Rules of Civil Procedure. Further, the point of error No. 1 is too general to be considered. Wyche v. Noah, 288 S.W.2d 866 (Tex.Civ.App.1956) wr. ref., n. r. e. Appellant's point of error No. 1 is overruled.

## EXEMPLARY DAMAGES

Appellant's second and last point of error is:

"The error of the Court in granting an instructed verdict, holding that there was no evidence of probative force to raise the issue that appellee or any employee of appellee, classified as a supervisory employee or vice principal, was guilty of any gross negligence."

Appellee relied upon the following reasons in its motion for instructed verdict:

"I. There is no evidence of probative force to raise the issue that Defendant was guilty of any gross negligence on the occasion in question.

II. There is no evidence of probative force to raise the issue that any employee of Defendant classified as a supervisory employee or vice-principal of this defendant was guilty of any gross negligence.

III. There is no evidence of probative force to raise the issue that any supervisory employee was guilty of any act of gross negligence which was the proximate cause of the accident in question.

IV. There is no evidence of probative force to raise the issue that this Defendant through any of its vice-principals or supervisory employees was guilty of any wanton or willful act so as to raise an issue justifying the recovery of exemplary damages.

V. Under the undisputed evidence, the deceased voluntarily assumed the risk of injury working under the circumstances shown by the evidence in this case."

This motion was granted by the court and the jury was charged to return a verdict against the plaintiff and in favor of the defendant Gulf States Utilities Company, which verdict was returned by the jury and judgment entered accordingly.

■ Appellant tried this case upon the allegation that certain named employees were vice-principals, for whose acts appellee could be held liable for exemplary damages. In such petition appellant named A. C. Handley, G. K. Phillips, K. D. Sistrunk, F. M. Peveto, L. P. Allen, Earl White and Hugh Beaumont as being guilty of gross negligence and vice-principals of the appellee. There was no proof that any of these employees were in fact vice-principals. None of these men had authority to employ or discharge employees. In determining that a man is a vice-principal it must be proved he had authority to hire and fire. In the absence of such authority, the employee does not fall within the category of vice-principal, for whose gross negligence, if any exists, the employer might be held responsible. Magnolia Petroleum Co. v. Studdard, 83 S.W.2d 1047 (Tex.Civ. App.1935, n. w. h.); H. B. Zachry Co. v. Fullilove, 177 S.W.2d 980 (Tex.Civ.App. 1943, wr. dis., w. o. m.); Waring v. Harris, 221 S.W.2d 345 (Tex.Civ.App.1949, wr. ref.); Magnolia Petroleum Co. v. Booth, 105 S.W.2d 356 (Tex.Civ.App.1937, wr. ref.).

As to other employees of Gulf States Utilities Company who were named in the petition of appellant and charged with gross negligence there was no evidence as to their duties or authority or that they participated in any of the events leading up to the fatal accident. There is no evidence that they were vice-principals or negligent in any way. Appellant has not designated any evidence that would raise an issue either that any of the employees he has charged with gross negligence were guilty of gross negligence or that they were vice-principals.

Appellee in a counterpoint urges that:

"Appellant having failed to establish that the employees alleged to have been guilty of gross negligence were vice-principals for whose acts Appellee could be held liable for exemplary damages, the Court properly granted Appellee's motion for instructed verdict."

Appellee's authorities thereunder are: Magnolia Petroleum Co. v. Studdard, supra; H. B. Zachry Co. v. Fullilove, supra; Waring v. Harris, supra; Magnolia Petroleum Co. v. Booth, supra.

■ By such counterpoint it is the contention of appellee that appellant failed to prove that any of the employees charged with gross negligence were in fact vice-principals so as to render appellee liable for exemplary damages. Appellant's point of error does not attack the action of the trial court in sustaining this ground of appellee's as set forth in its motion for directed verdict. Thereby, appellant waived any point of error on this ground and the judgment, for such reason alone, must be affirmed.

■ The "safe place to work" doctrine is not involved in this case. There is no pleading of this doctrine. Proof of gross negligence must be affirmative and not negative. Sheffield Division, Armco Steel Corporation v. Jones, 376 S.W.2d 825 (S.Ct.1964); J. S. Abercrombie Co. v. Scott, 267 S.W.2d 206 (Tex.Civ.App.1954, wr. ref., n. r. e.). Appellant has not pointed out any specific affirmative act committed by any of those who were charged with

being guilty of gross negligence, namely: Handley, Sistrunk, Peveto, Phillips, Allen, White or Beaumont. Appellant in its petition charged each of them with various acts allegedly constituting gross negligence but appellant's brief does not set forth any testimony or make any contention that there was evidence to sustain any of these specific allegations. Appellant limits its argument, only contending there was evidence to raise an issue that appellee was guilty of gross negligence in failing to furnish LeJeune with a safe place to work. In order for appellant to have recovered it had the burden of proving that the party charged with gross negligence was a vice-principal; that the person so charged was guilty of gross negligence and that the act of gross negligence on the part of the party so charged was a proximate cause. There is no evidence to establish any one of these essential elements, for which reason the motion for instructed verdict was properly granted.

The evidence as to the existence of negligence is stated below:

█ On the morning of the accident there was a lightning storm with many high voltage lines down, requiring repair work at various places. This line was at Nederland Avenue and 23rd St. and down. All witnesses thought this line was fed from Line 98, when in fact it was fed from Line 102 from the Crowder Substation. On Line 98 the switch was open with all men working, thinking the power came through that switch which was nearby, between 27th and 23rd St. They had been familiar with Line 98 in previous work in the area and did not know a change had been made so that the line in question was fed from the Crowder Substation No. 102, and not from 98. The breaker on 98 was checked and was open, which meant that no electricity was going to the line on the ground in the minds of all involved. Phillips and Sistrunk checked and rechecked this breaker. Peveto testified that the switch was checked and the line was dead. He handled the

line himself and it was dead. He helped to pull and straighten the wire. This he would not have done, as he so testified, if he had not been certain in his own mind that it fed out of 98 where it was open. There was no doubt in his mind but that it was safe to work on it. With the information he had from previous work on this line, he felt it was safe to work on that line in the manner in which he did and also to allow his men to work on the line. The open breaker was actually seen by Handley, Sistrunk, Peveto and Phillips. Each testified they thought the line which was down and on which the work was being performed fed from 98. They did not know it had been changed to feed from 102 at a different substation. Thinking the line was completely safe to work upon, after taking the precaution of observing the breaker and checking with the others who saw it, they saw no need to take other or additional precautions. After Phillips and Sistrunk left the area where Peveto and others were engaged in repairing the line, they went to the Crowder Substation where they found switches open on lines 102 and 103. When the switch was closed on line 102 they had no knowledge that this would affect the line on which LeJeune was working, resulting in his electrocution. There is no "conscious indifference" on the part of any witness in this record. Bennett v. Howard, 141 Tex. 101, 170 S.W.2d 709 (1943) defines gross negligence as:

> "[T]hat entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the right or welfare of the person or persons to be affected by it." See Cutler v. Gulf States Utilities Co., 361 S.W.2d 221 (Tex. Civ.App.1962, wr. ref., n. r. e.) and cases cited on page 223.

In the instant case there is no evidence meeting the requirement that there be an entire want of care on the part of appellee so as to raise the belief that the acts complained of were the result of a conscious indifference to the rights or welfare of

Mr. LeJeune. There is no evidence or indication of wilfulness, wantonness or malice on the part of appellee. There is no evidence, therefore, that appellee was guilty of gross negligence. Jones v. Ross, 141 Tex. 415, 173 S.W.2d 1022 (1943); Missouri Pacific Railroad Co. v. Rose, 380 S.W.2d 41 (Tex.Civ.App.1964, wr. ref., n. r. e.); Morton Salt Co. v. Wells, 35 S.W.2d 454 (Tex. Civ.App.) 123 Tex. 151, 70 S.W.2d 409; Nichols v. Texas Electric Service Co., 206 S.W.2d 860 (Tex.Civ.App.1947, wr. ref., n. r. e.); Galveston, H. & S. A. Ry. Co. v Waldo, 119 Tex. 377, 29 S.W.2d 323 (1930); 38 Tex.Juris.2d, ¶ 850, p. 207.

Appellant's point of error No. 2 is overruled.

Judgment of trial court affirmed.